```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

LOWELL BAKER,

                    Plaintiff,
                                              12 Civ. 2027 (RWS)
     - against -
                                                   OPINION

THE CITY OF NEW YORK, ET AL.,

                    Defendants.

-----------------------------------------X
```

A P P E A R A N C E S:

   Plaintiff Pro Se

   LOWELL BAKER
   5904 Beverly Road
   Brooklyn, NY  11203


   Attorney for Defendants

   MICHAEL A. CARDOZO
   CORPORATION COUNSEL OF THE CITY OF NEW YORK
   100 Church Street
   New York, NY 10007
   By:  John Buhta, Esq.

**Sweet, D.J.**

Defendants City of New York, Dora B. Schiro, Robert N. Cripps, Michael R. Bloomberg (s/h/a "Michael Blumberg") and Raymond Kelly (collectively, "Defendants") have moved to dismiss the complaint ("Complaint") of plaintiff Lowell Baker ("Baker" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief may be granted. For the reasons set forth below, Defendants' motion is granted and the Complaint is dismissed, with leave given to replead within twenty days.

**Prior Proceedings**

On March 16, 2012, Plaintiff filed the Complaint which has asserted a claim under 42 U.S.C. § 1983 arising from the alleged failure of prison officials to provide Plaintiff with a diet that was both sufficiently nourishing and also in conformance with necessities of Plaintiff's medical condition and religious dietary requirements. See Compl. at 4-9.[1]

---

[1] All references herein to pages in the Complaint refer to the page number assigned by ECF.

1

On March 8, 2013, Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim.  The motion was taken on submission on April 17, 2013.

**The Facts**[2]

At the time of the events relevant to the Complaint, Plaintiff was a pre-trial detainee in the custody of the New York City Department of Correction ("DOC") at the Anna M, Kross Center ("AMKC") at Rikers Island.  Compl. at 2.

As a child, Plaintiff was diagnosed with a "critical intestinal, gastric condition." Compl. at 5.  This condition caused "colon inflation followed by ulcers" and necessitated surgery to treat an "epigastic hernia." Id.  Subsequent to that procedure, Plaintiff was placed on "the most extreme vegan diet," and has since then continued to "embrace [some] form of vegan diet," by abstaining from eating "all and any kind of meat and meat byproduct, dairy, process[ed] food, artificial sweets and sweetener, alcohol, synthetic food, too

---

[2] The allegations in the Complaint are assumed to be true for the purposes of the instant motion to dismiss. See, e.g., Musah v. Houslanger, No. 12 Civ. 3207 (RWS), 2012 WL 5835293, at *2 (S.D.N.Y. Nov. 16, 2012).

2

much fruit high in acid, white starch...etc[ . . .] [.]" Id. If Plaintiff's gastrointestinal condition is ignored, it "can and will result in [his] condition reoccurring and even worsening." Id.

Plaintiff is a member of a religion that he alternatively identifies as "Yah-Wehons," "Hebrew Adventist," and "Jewish Adventist." Id. at 4, 14-15. Plaintiff's religious beliefs require him to "live a life of meatless consumption for the promotion of health and well being." Id. at 3.

Consonant with Plaintiff's medical and religious needs, during his incarceration at AMKC Plaintiff[3] received a modified, meatless diet. Id. at 7. He was served kidney beans as "protein substitute for meat," as well as vegetables, soy milk, cereal, and bread as part of his daily meals. Id. at 7-8. Additionally, Plaintiff was able to consume ramen noodle soup obtained from the prison commissary. Id. at 8. In one instance, however, Plaintiff was served mashed potatoes

---

[3] The Complaint is unclear as to the circumstances surrounding, and timing of, Plaintiff's incarceration, though it appears from the docket that he has since been released, see Dkt. No. 26.

that contained milk, which he has trouble digesting due to his medical condition, and as a result became "ill." Id. at 7. Moreover, Plaintiff has alleged that the beans he received contained certain "toxins" that were harmful to his medical condition. Id. at 8. Consequently, Plaintiff often declined to eat some of the food he was served, see Id. at 5, and as a result, often did not consume sufficient food to meet his daily required caloric intake. Id. at 8.

During his incarceration, Plaintiff filed a grievance regarding his diet, and was subsequently visited by the "kitchen administrative staff." Id. at 10, 14. When this visit did not resolve the issues regarding Plaintiff's diet, Plaintiff sent letters to defendants Cripps and Schiro.[4] See Id. at 11, 15, 17. In response, Plaintiff received a letter from Maggie Peck, DOC's Director of Constituent Services, advising Plaintiff to utilize AMKC's Inmate Grievance Resolution Program. See Id. at 20.

Plaintiff has alleged that, as a result of his insufficient diet, experienced symptoms such as "low vision,

---

[4] At the time of the events relevant to the Complaint, defendant Schiro was commissioner of the DOC, and defendant Cripps was a deputy warden at AMKC.

4

dizziness, "constant and very sharp head pain," "exhaustion and weryness [sic]" and weight loss. Id. at 3, 9. Plaintiff has sought $2,000,000 in damages for, *inter alia*, "caloeric intake depravation [sic]," as well as "an order ensuring proper and [adequate] meal distribution to detainee[s] having similar or any other condition requiring [a] special diet." Id. at 11.

**Applicable Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

When a litigant is proceeding pro se, "his submissions will [ ] be liberally construed and read to raise the strongest argument they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). In addition, the submissions of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers," Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 176 (1980), and courts "apply[] a more flexible standard to evaluate their sufficiency tha[n] when reviewing a complaint submitted by counsel," Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 139-40 (2d Cir. 2000). However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477

(2d Cir. 2006) (internal citation and quotation marks omitted).

**The Complaint Is Dismissed Due To Plaintiff's Failure To Exhaust Administrative Remedies**

Pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), prisoners are prohibited from bringing any legal action "with respect to prison conditions under [42 U.S.C.] § 1983 . . . until such administrative remedies as are available are exhausted." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)). The PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. Under the PLRA, a prisoner must properly exhaust the administrative remedies available to him – that is, he must comply with the rules and procedures required by the administrative process that is in place in the prison in which he is incarcerated – prior to filing suit in federal court. See Woodford v. Ngo, 548 U.S. 81, 90-103 (2006).

While a prisoner is not required to affirmatively plead exhaustion, dismissal pursuant to Rule 12(b)(6) for failure to exhaust is appropriate when "nonexhaustion is clear from the face of the complaint." McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003).

A three-step analysis is entailed in the determination of whether a prisoner's complaint should be dismissed for failure to exhaust administrative remedies. See Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). In the first step, the court must determine "whether administrative remedies were in fact available to the prisoner." Id. In the second step, "the court must determine whether defendants waived the defense by failing to raise or preserve it, or whether they should otherwise be estopped from asserting the defense because they prevented or inhibited the plaintiff from exhausting his remedies." Antrobus v. Warden of GRVC, No. 11 Civ. 5128 (JMF), 2012 WL 1900542, at *2 (S.D.N.Y. May 25, 2012) (citing Hemphill, 380 F.3d at 686). Finally, the court "consider[s] whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural

requirements." Hemphill, 380 F.3d at 686 (internal quotation marks omitted).

With respect to the first step in the exhaustion analysis, the New York City Department of Correction ("DOC"), which operates the correctional facility in which Plaintiff was incarcerated during the period relevant to the Complaint, see Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Def. Mem."), at 1-2, employs a well-established five-step administrative grievance procedure known as the Inmate Grievance Resolution Program ("IGRP"). See Antrobus, 2012 WL 1900542, at *3. The basic procedure prescribed by the IGRP is as follows:

> After an inmate has submitted his grievance form, the Inmate Grievance Resolution Committee ("IGRC") is given an opportunity to resolve the issue informally. If it does not respond within five days or fails to resolve the issue to the inmate's satisfaction, the inmate may then request a formal hearing before the IGRC. If the inmate is still unsatisfied with the IGRC's decision, he may appeal it, first to the commanding officer of the facility, then to the Central Office Review Committee, and finally to the New York City Board of Correction. Crucially, an inmate's administrative remedies are not exhausted until he proceeds through all five levels of the IGRP.

9

Id. at *3 (internal citations, quotation marks and alterations omitted).  In the instant case, Plaintiff has alleged that he satisfied the initial step of the IGRP process by filing a grievance, see Compl. at 10, but has expressly stated that after his initial complaint was "ignored," Plaintiff did not continue to pursue his grievance in accordance with the prescribed IGRP process.  Id.  Instead, Plaintiff sent letters to defendants Cripps and Schiro.  See id. at 11.  Such letters are not compliant with the DOC's IGRP grievance process, and the act of sending such letters does not constitute exhaustion of the administrative remedies available to Plaintiff.  See Antrobus, 2012 WL 1900542, at *3.

As to the second step in the exhaustion analysis, Defendants did not waive or otherwise forfeit their right to raise exhaustion as an affirmative defense, but rather properly raised the defense in the instant motion.  In addition, Plaintiff has not alleged that the Defendants did anything to inhibit his exhaustion of remedies, as Plaintiff "has not alleged any threats, beatings, denials of grievance forms, or . . . other misconduct deterring him from fulfilling

10

the requisite procedure." Rivera v. Anna M. Cross Ctr., No. 10 Civ. 8696 (RJH), 2012 WL 383941, at *6 (S.D.N.Y. Feb. 7, 2012) (quoting Kasiem v. Switz, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010)) (internal quotation marks omitted).

Similarly, with respect to the third step in the exhaustion analysis, Plaintiff has not alleged any special circumstances that would "justify [Plaintiff's] failure to comply with administrative procedural requirements."

Since is it plain from the face of the Complaint that Plaintiff has failed to exhaust the administrative remedies available to him as required by the PLRA, and since Plaintiff has not alleged any circumstances that justify the excusal of his failure to exhaust, the Complaint is dismissed on that basis, and there no need to consider Defendants' alternative bases for dismissal. See Antrobus, 2012 WL 1900542, at *4.

11

## Conclusion

For the reasons set forth above, Defendants' motion to dismiss the Complaint is granted, with leave given to replead within twenty days.

It is so ordered.

New York, NY
August 19, 2013

ROBERT W. SWEET
U.S.D.J.

12